IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-546-FL

| | |
|---|---|
| REGINALD B. WRIGHT, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Claimant Reginald B. Wright ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 6 February 2006, alleging disability beginning 25 June 2005. (R. 78). His claim was denied initially and upon reconsideration. (R. 55-58, 62-64). A hearing before the Administrative Law Judge ("ALJ") was held on 30 April 2008, at which Claimant was represented by counsel. (R. 17-39). On 4 September 2008, the ALJ issued a decision denying Claimant's request for benefits. (R.7-16). On 27 October 2009, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a

complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently

working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) failure to consider the opinions of governmental and non-governmental agencies in accordance with Social Security Ruling ("S.S.R.") 06-3p; (2) improper credibility assessment; and (3) relying exclusively on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids") in determining Claimant was capable of other employment existing in the national economy.[1] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 4, 6, 8 ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: degenerative joint disease and degenerative disc disease. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in

---

[1] The court discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

3

combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a narrow range of light work and a wide range of sedentary work[2] or to lift/carry fifteen pounds occasionally and ten pounds frequently as well as sit six hours of an eight hour workday and stand/walk two hours of an eight hour workday with limitations in climbing, squatting and crawling. (R. 12-13). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 13).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a tire builder. (R. 15). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-five (45) years old and unemployed. (R. 21). Claimant is a high school graduate but explained he experiences difficulty reading and writing. (R. 21, 36).

Claimant testified that he cannot work due to back pain and a fractured right ankle. (R. 21, 25, 26). Claimant's back pain radiates to his left leg and foot, often causing his left leg and ankle to experience numbness and pain, respectively. (R. 31). Claimant undergoes pain management for his back and has received three injections which have provided minimal relief. (R. 33). Claimant has discussed the possibility of back surgery with his physician; however, Claimant fears surgery could exacerbate his condition. (R. 33). Claimant also takes pain medication which cause drowsiness, irritability and headaches. (R. 31-32). Claimant does not use an assistive walking device. (R. 27-28).

Claimant cannot sit, stand or walk for prolonged periods of time due to left leg numbness, tailbone aches, right ankle pain and back discomfort. (R. 23, 25, 27-28). Claimant estimated that he can walk and stand for no more than fifteen minutes. (R. 28-29). Claimant spends the majority of his time lying down in bed and alternates between resting on his back and stomach due to back pain. (R. 30-31). Claimant often keeps his right leg elevated when lying down. (R. 30).

Claimant's household chores are limited to washing dishes, dusting and performing yard work on occasion, including riding a lawnmower. (R. 34). Claimant drives once or twice a week to pick up his children from school or to visit his mother. (R. 24, 35). Claimant attends church up to three times a month, plays the guitar and reads the newspaper. (R. 34-36). Claimant performs no exercises with the exception of riding a stationary bike. (R. 38).

## DISCUSSION

I. **The ALJ did not err in failing to evaluate evidence from governmental and nongovernmental agencies.**

Claimant contends the ALJ erred in failing to consider Claimant's award of worker's compensation benefits and a related settlement agreement with his former employer, Goodyear Tire & Rubber Company ("Goodyear"), arising therefrom. Pl.'s Mem. at 5.

Claimant testified to receiving worker's compensation for approximately two years, which terminated upon entering into a settlement agreement with Goodyear. The administrative record contains documentation of the North Carolina Industrial Commission's ("the Commission") approval of the settlement agreement discharging Goodyear from further liability under the Worker's Compensation Act and a 14 November 2007 letter from Goodyear reciting Claimant's monthly payment pursuant to his medical retirement pension. (R. 108, 149). While the ALJ acknowledged Claimant's testimony as to both "workman's compensation" and "medical retirement" in considering whether Claimant was engaged in substantial gainful employment, the ALJ provided no further discussion of a worker's compensation award. (R. 12).

Although 20 C.F.R. § 404.1504 provides that a disability determination made by another governmental or non-governmental agency is not binding on the Commissioner, Social Security Ruling 06-03p clearly states that "evidence of a disability decision by another governmental or nongovernmental agency *cannot be ignored and must be considered.*" S.S.R. 06-03p, 2006 SSR LEXIS 5, at *17, 2006 WL 2329939, at *6; *see also* 20 C.F.R. §§ 404.1512(b)(5). The regulations cite "Workers' Compensation" as an example of an agency whose determination should be considered. S.S.R. 06-03p, 2006 SSR LEXIS 5, at *16, 2006 WL 2329939, at *6.

Case 5:09-cv-00546-FL   Document 31   Filed 09/16/10   Page 6 of 17

Defendant points out that the record contains no decision from the Commission awarding benefits to Claimant or discussing Claimant's medical condition or ability to work. Def.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 13 ("Def.'s Mem."). While acknowledging the settlement agreement, Defendant correctly points out that the agreement provides no evaluation of Claimant's ability to work and contains no medical opinion. Def.'s Mem. at 13. To the contrary, the agreement provides that "significant legal issues [exist] concerning whether . . . [Claimant] is disabled.'" (R. 100). As for the November 2007 letter regarding Claimant's monthly retirement payment, Defendant correctly points out that there is no statement of the basis for the payment. Def.'s Mem. at 13. The letter merely notes the subject as "Retirement Pension Verification" and states that Claimant is a recipient of a specified monthly payment for his lifetime. (R. 149).

Claimant has not included in the record for consideration any evidence indicating what benefits Claimant received, the period during which he received benefits or the basis for the benefits received. *See Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) ("[W]hen an applicant for social security benefits is represented by counsel, the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . . .[the ALJ] is not required to function as the claimant's substitute counsel . . . ." *Bell v. Chater*, No. 95-1089, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)). As there is no documentation in the record providing the basis for any compensation Claimant received, there was nothing for the ALJ to consider. *Id*. Indeed, remanding this matter will not resolve this issue given

7

there is no evidence of a disability benefits decision in the case record. *See* S.S.R. 06-03p, 2006 SSR LEXIS 5, at *10, 2006 WL 2329939, at *6 (the ALJ is required to evaluate all evidence *in the case record*) (emphasis added). For these reasons, Claimant's argument as to this issue is without merit.

## II. The ALJ properly assessed Claimant's credibility and did not require the presence of objective medical evidence of pain.

Claimant argues that the ALJ improperly evaluated his credibility. Pl.'s Mem. at 8. In particular, Claimant contends that the ALJ improperly considered Claimant's activities of daily living and impermissibly relied on a lack of objective evidence in evaluating Claimant's complaints of pain.

This court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

8

Here, the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records as to each impairment and noted the findings on diagnostic testing. In particular, the ALJ acknowledged Claimant's treatment for back pain at Cape Fear Family Medical Center (R. 353-58, 360-61, 365-69), summarized MRI scans indicating degenerative facet joint disease, mild to moderate neural foraminal narrowing with no indications of disc herniation or stenosis and mild but stable disk bugles (R. 313-359) and noted a 19 April 2006 x-ray of Claimant's lumbar spine revealed normal findings (R. 385). (R. 13-14). Regarding Claimant's right ankle, the ALJ noted that Peter Dalldorf, M.D., Claimant's treating physician, performed a right ankle arthroscopy in 2003 and a right ankle arthroscopic debridement in 2005. (R. 13-14, 326-27, 351). The ALJ discussed further Dr. Dalldorf's treatment of Claimant "for residuals of [the] arthroscopy and low back pain [] secondary to facet degeneration." (R. 13, 328-34). In reviewing Claimant's ankle impairment, the ALJ also considered MRI scans indicating evidence of multiple cystic areas, mild inflammation, a suspected talofibular ligament tear, a meniscal tear and patellofemoral degenerative changes (R. 315, 318) and a 17 October 2007 x-ray which was "unremarkable" and showed no evidence of fracture, dislocation or bone/joint abnormalities (R. 395). (R. 13-14). Finally, the ALJ acknowledged a 13 August 2006 MRI scan of Claimant's right elbow which indicated small cystic changes. (R. 14, 317).

Despite Claimant's argument to the contrary, the ALJ also addressed adequately the factors set forth in 20 C.F.R. § 404.1529(c)(3) in accordance with S.S.R. 96-7p. In particular, the ALJ noted the following: (1) Claimant's daily activities; (2) Claimant's complaints of back, right ankle and right

elbow pain, leg numbness and tailbone aches; (3) Claimant's testimony concerning his inability to sit, stand or walk for prolonged periods due to back discomfort and leg numbness and the exacerbation of his back pain by sitting, standing and walking; (4) Claimant's complaints of side-effects from his medications, including drowsiness, crankiness and headaches, and the fact he does not use an assistive walking device; (5) Claimant's testimony that he sits with his ankle propped up and spends the majority of his day lying down in an attempt to alleviate pain.

The crux of Claimant's argument centers on the daily activities identified by the ALJ and in particular, the ALJ's alleged failure to explain how the performance of these activities is inconsistent with limitations reported by Claimant. Evidence of daily activities is highly probative to the credibility analysis. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Craig*, 76 F.3d at 594 (noting the factors to be considered in the credibility process include evaluation of claimant's activities). Here, the ALJ cited Claimant's testimony that he could ride a lawnmower and a stationary bike, drive, perform basic household chores, play a guitar, attend church and visit his mother. When viewed in combination with the entirety of the ALJ's credibility analysis and in particular, the ALJ's examination of the restrictions noted by treating and non-treating sources, it is evident the ALJ found Claimant's daily activities tended to show that his claims of an inability to sit, walk and stand were exaggerated. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (holding that a claimant's daily activities can suggest claimant is not disabled); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (a claimant's daily activities, such as performing exercise, cooking, and doing laundry were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical work activities).

As the ALJ noted, Alan Cohen, M.D., who performed a disability determination evaluation,

10

found Claimant's ability to stand and "move about" were "mildly impaired" but his ability to sit was not impaired. (R. 14, 383). This finding is in accord with that of Dr. Dalldorf who noted Claimant could not handle prolonged standing. (R. 14, 319). Dr. Cohen noted also that Claimant exhibited a steady gait, full muscle strength and a normal spine with "no evidence of muscle tenderness/atrophy, back deformity/tenderness or extremity edema/deformity." (R. 14, 383). These findings, in consideration with Claimant's daily activities, conflict with the limitations alleged by Claimant due to his pain and indicate Claimant can perform work at a level consistent with the ALJ's RFC finding, and in particular, the ability to sit for a majority of the workday.

The ALJ considered Claimant's pain allegations to the extent they were credible. In particular, despite two state agency physical RFC assessments indicating Claimant was capable of standing and walking for six hours of an eight-hour day (R. 158, 170), the ALJ found Claimant capable of standing and walking only two hours of an eight-hour work day in light of Claimant's degenerative joint disease and degenerative disc disease. (R. 14). The ALJ also discounted a state agency non-examining consultant's opinion that Claimant was capable of medium work (that is, lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds, *see* 20 C.F.R. §§ 404.1567(c)) in light of evidence to the contrary. (R. 14, 170). As the ALJ acknowledged, Dr. Dalldorf found Claimant could carry up to 10 pounds and lift up to 20 pounds only. (R. 14, 319). Similarly, Andrew Graham, a certified functional capacity evaluator, concluded Claimant could lift fifteen pounds. (R. 14, 321). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of his limitations was not entirely consistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect
11

to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

### III. The ALJ did not err in relying on the Grids.

Finally, Claimant argues the ALJ erred by relying solely upon the Grids. Specifically, Claimant contends his limitations in climbing, squatting and crawling warrant the testimony of a vocational expert ("VE") as to the impact of these nonexertional limitations[3] on Claimant's occupational base. Pl.'s Mem. at 6.

At step five in the sequential evaluation, an ALJ is required to show that a claimant, based on his age, education, work experience and RFC, can perform other substantial gainful work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Pass*, 65 F.3d at 1203. The ALJ may carry this burden through the use of the Grids if a claimant does not have any nonexertional impairments preventing him from performing the full range of work at a given exertional level. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). In such a case, the Grids allow the ALJ to take "administrative notice" of the availability of jobs in the national economy that can be performed by individuals based on combinations of the following factors: the claimant's age, education, job experience, and functional capacity to work. *See* 42 U.S.C. § 1382c(a)(3)(B). However, if a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his exertional impairment(s), then the use of the Grids may be an

---

[3] Nonexertional limitations that may preclude reliance on the Grids include climbing, balancing, stooping, kneeling, crouching and crawling. S.S.R. 83-14, 1983 SSR LEXIS 33, at *3, 1983 WL 31254, at *1; *see also* S.S.R. 85-15, 1985 SSR LEXIS 20, at *17, 1985 WL 56857, at *7.

12

inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2 (explaining "where an individual has . . . impairments resulting in both strength limitations and nonexertional limitations, the [Grids] . . . *are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone* and, if not, the [Grids] . . . provide a framework for consideration . . . .") (emphasis added).

Thus, the fact that an individual alleges a non-exertional limitation does not automatically preclude application of the Grids. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Rather, "the proper inquiry . . . is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.*; *see also Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) ("If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the [G]rids because the range of jobs available to the impaired claimant is narrower than the [G]rids would indicate."). When a claimant has a combination of nonexertional and exertional limitations and it is clear that the nonexertional limitations will have little effect upon the exertional occupational base, the finding directed by the Grids is sufficient and VE testimony is unnecessary. *See* S.S.R. 83-14, 1983 SSR LEXIS 33, at *11-14, 1983 WL 31254, at *6; *see also Smith*, 719 F.2d at 725 (holding reliance on the Grids is precluded only if the nonexertional condition affects claimant's RFC to perform work of which she is exertionally capable).

Here, it is clear that the Claimant's non-exertional limitations had little impact on Claimant's RFC such that reliance solely on the Grids was not erroneous. The ALJ found Claimant capable of performing a narrow range of light work and a wide range of sedentary work and that Claimant has

"limitations in climbing, squatting and crawling." (R. 13). With respect to climbing, S.S.R. 85-15 states that "[u]sual everyday activities" entail climbing "a few stairs." S.S.R. 85-15, 1985 SSR LEXIS 20, at *17, 1985 WL 56857, at *6. There is no evidence in the record that Claimant is incapable of climbing stairs; rather, the evidence indicates Claimant should never climb ladders, ropes and scaffolds. (R. 159) (A state agency non-examining consultant's report noting Claimant can "never" climb ladders, ropes or scaffolds). The regulations provide, however, that such restrictions have little effect on the sedentary or light occupational base. S.S.R. 83-14, 1983 SSR LEXIS 33, at *2, *13, 1983 WL 31254, at *2, *5 (explaining relatively few jobs in the national economy require ascending or descending ladders and scaffolding and noting in particular that an inability to ascend or descend scaffolding, poles, and ropes has little effect on the light occupational base); S.S.R. 96-9p, 1996 SSR LEXIS 6, at *21, 1996 WL 374185, at *7 ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds . . . would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work). With respect to Claimant's crawling limitation, S.S.R. 85-15 states that "limitations on the ability to crawl would be of little significance in the broad world of work" as it is a "relatively rare activity even in arduous work." S.S.R. 85-15, 1985 SSR LEXIS 20, at *18, 1985 WL 56857, at *7; *see also* S.S.R. 83-14, 1983 SSR LEXIS 33, at *13, 1983 WL 31254, at *5 (citing an inability to crawl on hands and knees as having little effect on the light occupational base); S.S.R. 96-9p, 1996 SSR LEXIS 6, at *21, 1996 WL 374185, at *7 (noting crawling is usually not required in sedentary work).

The term "squat" is not a commonly used term in vocational parlance and in fact, is not defined in the Social Security Rulings nor is it listed as a postural category on the Physical Residual

14

Functional Capacity Assessment. The rulings and RFC assessment do, however, list "crouch"- defined as "bending the body downward and forward by bending both the legs and spine." S.S.R. 85-15, 1985 SSR LEXIS 20, at *18, 1985 WL 56857, at *7. In comparing the definitions of "crouch" and "squat," it is evident that these terms are synonymous. *See Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1133 n.5 (C.D. Cal. 2009) (describing "crouch" and "squat" as "essentially synonymous"); *see* MERRIAM-WEBSTER DICTIONARY, available at http://www.merriam-webster.com/dictionary/ (defining "squat" as "to cause (oneself) to crouch or sit on the ground" and listing "squat" as a synonym of "crouch"); RANDOM HOUSE DICTIONARY (1995 ed.) (defining "squat" as "to sit in a low or crouching position with the legs drawn up closely beneath or in front of the body"). A crouching limitation, however, has little, if any impact, on the sedentary or light occupational base. *See* S.S.R. 83-14, 1983 SSR LEXIS 33, at *6-7, 1983 WL 31254, at *2 (explaining "to perform substantially all of the exertional requirements of most sedentary and light jobs, *a person would not need to crouch . . . .*") (emphasis added); S.S.R. 96-9p, 1996 SSR LEXIS 6, at *21, 1996 WL 374185, at *7 (explaining crouching is an activity not usually required in sedentary work).

The court acknowledges conflicting evidence as to Claimant's ability to squat or crouch. In particular, Claimant's treating physician, Peter Dalldorf, M.D., advised that Claimant "*should not do any . . . squatting,*" while E. Woods, M.D., a state agency non-examining consultant, limited Claimant to "crouching *occasionally*" and Andrew Graham, a certified functional capacity evaluator, found Claimant limited to *infrequent* squatting. (R. 159, 319, 322) (emphasis added). The ALJ, according these opinions substantial, significant and controlling weight, respectively, did not acknowledge these contradictory findings. (R. 13-14). Nevertheless, in light of the minimal impact

15

any crouching limitation has on the sedentary or light occupational base, the court finds the ALJ's failure to acknowledge the contradictory evidence harmless. *See Mickles*, 29 F.3d at 921 (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); *Currie v. Astrue*, No. 7:09-CV-73-BO, 2010 U.S. Dist. LEXIS 87233, at *4 (E.D.N.C. Aug. 21, 2010) (finding the ALJ's failure to inquire about an inconsistency in the record as "harmless error because no substantive inconsistency existed") (citations omitted); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)).

Accordingly, the ALJ properly concluded Claimant's non-exertional impairments would not prevent him from performing all the work activities he is otherwise exertionally capable of performing. As such, the finding directed by the Grids is proper and testimony from a VE was not required.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of

plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 15th day of September, 2010.

                                      Robert B. Jones, Jr.
                                      United States Magistrate Judge